**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 26-CR-189-SEH |
| MELISA SUSAN KYLE,<br>a/k/a "Melisa Susan Vodden," | |
| Defendant. | |

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Revoke Order of Detention [ECF No. 29]. The government opposed the motion and filed a response [ECF No. 34]. For the reasons set forth below, the motion is denied.

### I. Background and Procedural History

Defendant Melisa Kyle is charged with Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(viii) [ECF No. 14]. Before Defendant's initial appearance on the related complaint, the government filed a motion for detention, asserting that the court should detain because no conditions, or combination of conditions, of release could reasonably assure Defendant's appearance and the safety of any other person and the community. [ECF No. 3 at 2].

On May 18, 2025, the defendant waived her right to a detention hearing and consented to detention. [ECF No. 12]. However, when a space became available for her at Catalyst Drug Treatment Program on May 27, 2026 she sought release. [ECF No. 18 at 2]. Her plan was to attend inpatient treatment and then reside in Grove, Oklahoma pending trial. [*Id*.]. The detention hearing was set for May 28, 2026 before United States Magistrate Judge Mark Steele. [ECF No. 22].

Judge Steele ordered defendant remain detained. [ECF No. 24]. He found Defendant had been charged with an offense for which a maximum term of imprisonment of 10 years or more was prescribed in the Controlled Substances Act, and that she had not rebutted the presumption under 18 U.S.C. § 3142(e)(3) that no condition or combination of conditions would reasonably ensure the safety of the community. He further found that the government had proven by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community. [*Id*.]. In support of this finding, Judge Steele cited defendant's alleged controlled substance offense, the strong weight of the evidence against her, the lengthy period of incarceration she would potentially serve if convicted, the danger her release would pose to any person or the community, and her prior criminal history. [*Id*. at 3].

2

### A. Special Agent Dominguez and the Government's Proffer

The government proceeded through witness testimony at the detention hearing, and the Court took judicial notice of the pretrial services report, as well as the complaint and affidavit. [ECF No. 36 at 3–4]. DEA Special Agent Laura Dominguez testified that Tulsa County Deputy Sheriff Freddie Alaniz spotted defendant's rental vehicle traveling eastbound on Interstate 44 with a California license plate. [*Id.* at 4–7]. Alaniz performed a license plate reader check and learned that the vehicle had recently traveled between Tulsa, Oklahoma and the California/Arizona border. [*Id.* at 6]. After observing some minor traffic violations, such as following too closely and conducting an improper lane change, Alaniz decided to conduct a traffic stop. [*Id.* at 7]. According to the testimony, Defendant was nervous and her hands were shaking as she retrieved her driver's license and insurance for Alaniz. [*Id.* at 8]. While talking with Defendant, Alaniz noticed four large suitcases and one small suitcase in the back seats of the vehicle. [*Id.* at 7].

Alaniz directed Kyle to accompany him to his patrol car. [*Id.* at 8]. There, Defendant stated that she had recently returned from visiting a cousin in California. [*Id.* at 9]. She said she'd purchased a suitcase because she had bought a lot of stuff and didn't want to have to carry it all around in Walmart bags. [*Id.*]. After giving Defendant a warning about the traffic violations,

3

Alaniz asked if he could conduct a search of her vehicle. [*Id.* at 9–10]. After Defendant declined to consent, Alaniz told her that he intended to use a narcotics dog to conduct an open-air sniff around her vehicle. [*Id.* at 10]. At that point, Defendant told Alaniz that she had marijuana in her vehicle. [*Id.* at 11]. The dog alerted to an odor on Defendant's vehicle, and Alaniz conducted a search. [*Id.*].

Each of the pieces of luggage law enforcement opened contained large plastic zipper bags containing a white, crystal-like substance. [*Id.*]. The luggage also contained dryer sheets, which Dominguez said were often used by drug traffickers to conceal the smell of drugs. [*Id.* at 12]. The total gross weight of the narcotics was 44,528.9 grams. [*Id.*]. The crystal-like substance field tested presumptively positive for methamphetamine and had a market value of approximately $385,000. [*Id.* at 12, 14]. Marijuana flower, vapes, a pipe, and other items, along with a black, locked box containing $7,000 cash. [*Id.* at 13].

The investigation revealed that defendant had rented the vehicle she was driving on April 2, 2026, and that the odometer reading upon rental was 37,647 miles. [*Id.* at 14–15]. On May 4, 2026, when the defendant renewed her vehicle rental agreement, the odometer reading was 50,706 miles. [*Id.* at 15]. Dominguez testified that, in her opinion, this mileage and the license

plate reader hit information together indicate that the defendant made multiple trips to California. [*Id.* at 16]. She testified that, based on her training and experience, there are sources of methamphetamine supply in California. [*Id.*]. It was further Dominguez's opinion that defendant likely had a significant drug debt associated with the methamphetamine she was transporting. [*Id.*].

### B. Defendant's Proffer

The Defendant proffered the pretrial services report and the change in circumstances that had occurred since the defendant initially waived her detention hearing. [*Id.* at 31–32]. Defendant acknowledged that there was no release plan approved by the United States Probation office when she was initially taken into custody, but Defendant had recently been accepted into the Catalyst residential drug treatment program in Oklahoma City. [*Id.* at 32]. The program would last 60–90 days, and she could be accepted into the program as early as the next day. [*Id.*]. After the inpatient treatment program, Defendant proffered she could live in Grove, Oklahoma with Cary Giddens, a personal friend. [*Id.* at 33].

### C. The Pretrial Services Report

The information in the Pretrial Service Report prepared by U.S. Probation was verified by the Defendant's daughter, Brantley Vodden, and her mother,

Mary Wheeler. [PTSR at 1.]. Defendant has lived in Missouri for most of her life, and had been living in Marionville, MO for the last three years but had been evicted the previous month. [*Id.* at 1–2]. Defendant reported she has been unemployed since 2023 but received financial support from a trust in her mother's name. [*Id.* at 2.]. Her monthly expenses total approximately $1,300 per month, and she has an additional $5,000 in cash stored at her mother's house and $600 in various accounts. [*Id.* at 3.]

The report indicates that Defendant was diagnosed with bipolar disorder in 1995, was diagnosed with PTSD in 2022, and has previously been hospitalized for mental health reasons. [*Id.* at 3]. Defendant reported that she used both cannabinoids and methamphetamine for years prior to her arrest. [*Id.*]. Her prior convictions include unlawful use of drug paraphernalia in 2001, distributing, delivering, manufacturing a controlled substance in 2015, and leaving the scene of a motor vehicle accident in 2021. [*Id.* at 7]. The report also noted Defendant completed drug court in 2002, which required participation in outpatient counseling and narcotics anonymous meetings. [*Id.* at 4]. Ultimately, the Probation Office determined that no condition or combination of conditions would reasonably assure the appearance of Defendant or safety of the community. [*Id.* at 6].

6

### D. Judge Steele's Order

After hearing the proffers and arguments from both parties, Judge Steele ordered that Defendant be detained pending trial. [ECF No. 36 at 44]. In his order, Judge Steele specifically determined that the defendant did present some credible evidence to rebut the presumption that there were no conditions or combination of conditions that would reasonably assure the defendant's appearance. [*Id.*]. However, he found that the defendant had not rebutted the presumption that there were no conditions or combination of conditions that would reasonably assure the safety of any other person or the community. [*Id.* at 44–45].

## II. Applicable Standard

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The Court's review of a magistrate judge's detention order is *de novo*; thus, it must make "an independent determination of the proper pretrial detention or conditions for release." *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (citation omitted).

Under the Bail Reform Act of 1984, a court must order a criminal defendant's pretrial release, with or without conditions, unless it "finds that

no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Specifically, the government must prove risk of flight by a preponderance of the evidence, and danger to any other person or the community by clear and convincing evidence. *Cisneros*, 328 F.3d at 616 (citations omitted).

To determine whether there are conditions that would "reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community[,]" the Court must consider:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing,

8

> > appeal, or completion of sentence for an offense
> > under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the
> community that would be posed by the person's release.

18 U.S.C. § 3142(g). "[A]pplying and weighing the relative importance of the

statutory factors requires an individualized determination that necessarily

differs for each defendant depending on the circumstances of the case."

*United States v. Bragg*, No. 21-5082, 2021 WL 6143720, at *2 (10th Cir. Dec.

30, 2021).[1]

If the Court finds probable cause to believe the defendant committed one

of the offenses listed at 18 U.S.C. § 3142(e)(3), then it is presumed – subject

to rebuttal – "that no condition or combination of conditions will reasonably

assure the appearance of the person as required and the safety of the

community[.]" 18 U.S.C. § 3142(e)(3)(A). "An offense for which a maximum

term of imprisonment of ten years or more is prescribed in the Controlled

Substances Act" is an offense listed at 18 U.S.C. § 3142(e)(3)(A). "Once the

presumption is invoked, the burden of production shifts to the defendant."

*United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991). Although the

defendant must produce some evidence as to flight risk and danger to the

---

[1] Unpublished appellate opinions are not binding precedent but may be cited for their persuasive value. *See* Fed. R. App. P. 32.1.

community to rebut the presumption, the government always bears the ultimate burden of persuasion. *Id*. at 1354–55.

### III. Analysis

Based upon its independent, *de novo*, review of the record, the Court concludes that the government has shown clear and convincing evidence that there are no conditions, or combination of conditions, that will reasonably assure the safety of any other person or the community upon Defendant's release.

As an initial matter, based on the Court's review of the criminal complaint, a subsequently filed indictment, [ECF No. 14], and Dominguez's testimony at the detention hearing, the Court concludes that probable cause exists that Kyle committed a controlled substance offense carrying a maximum sentence of at least 10 years. *See United States v. Silva*, 7 F.3d 1046 (10th Cir. 1993) (table) ("The grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."). Thus, the presumption applies. Assuming without deciding whether Defendant rebutted the presumption of detention, the Court will apply the § 3142(g) factors to determine if Defendant should be detained pending trial. Even assuming Defendant successfully rebutted the presumption, the presumption

remains a factor for consideration for the district court in determining whether a defendant should be detained pending trial or released on conditions. *Stricklin*, 932 F.2d at 1355.

*A. The Nature and Circumstances of the Charged Offenses*

According to Dominguez, Defendant's rental car traveled 13,059 miles between April 2, 2026, and May 4, 2026. [ECF No. 36 at 14–15]. A single round trip from Oklahoma to California would be between 2,000 – 3,000 miles. [*Id.*]. During the traffic stop on May 10, 2026, Defendant told law enforcement that she was only just returning from California. [*Id.* at 7–9]. Given the high number of miles Defendant's rental vehicle travelled before her most recent trip to California, Dominguez opined that the mileage was consistent with multiple trips to California. [*Id.* at 16].

Defendant had 44 kilograms of methamphetamine stowed in multiple suitcases in her rental car when she was arrested at the scene of the traffic stop. [*Id.* at 12]. Dominguez stated that the packaging was consistent with how drug trafficking organizations and transnational criminal organizations package narcotics across state lines. [*Id.* at 11]. In addition to the methamphetamine, Defendant was also transporting a locked black box with $7,000 in U.S. currency. [*Id.* at 13]. The cash was, according to Dominguez, banded, divided, and transported in a way consistent with the proceeds of

drug trafficking. [*Id*.]. Dominguez estimated the total retail value of the methamphetamine transported by Defendant to be approximately $385,000. [*Id*. at 14].

The very large amount of methamphetamine, the way it was packaged in bundles and packed into suitcases, and presence of a locked cash box, and the high mileage on Defendant's rental car indicate that Defendant was engaged in hauling large amounts of drugs across multiple states. Dominguez described Defendant's role as a courier for a drug trafficking organization. [*Id*. at 20].

The nature and circumstances of the offense favors detention. It appears likely that the rest of the drug distribution network that Defendant worked within remains intact, and nothing would prevent Defendant from reengaging with that network if she were released. If, in fact, Dominguez testified that, based on her training and experience, Defendant owes a significant drug debt for the drugs seized. [*Id*.]. Although Defendant has stated that she has a plan to engage in treatment and then live with a friend in Oklahoma, no ankle monitor or other condition would stop her from leaving treatment or engaging in further drug distribution activity. The threat of harm to the community by such high weight, interstate

methamphetamine distribution is significant, and that threat cannot be abated with either inpatient treatment or monitoring by Probation.

### B. *The Weight of the Evidence*

The second factor also favors detention. There is unrebutted testimony that Defendant transported 44 kilograms of methamphetamine in her vehicle. [*Id.* at 12]. The government provided testimony that Defendant was ferrying that methamphetamine between California and Oklahoma. [*Id.* at 16]. Defendant proffered no evidence to rebut the government's evidence. The weight of the evidence against Defendant is substantial.

### C. *The History and Characteristics of the Defendant*

Defendant's history and characteristics are mixed. She is 46 years old and has been a member of her community in Missouri for most of her life. [PTSR at 1–2.]. Although she has no home or job now, she had lived in the same place for three years prior to her eviction and has some kind of income from a trust. [*Id.* at 2]. She has a significant history of mental health and substance abuse problems, and a criminal history that indicates prior involvement in drug distribution. [*Id.* at 3, 7]. She maintains supportive relationships with her children, and at least some relationship with her mother. [*Id.* at 2]. On a prior occasion, she was able to successfully complete drug court, which the

Court finds does indicate that she may be amenable to drug and mental health treatment. [*Id*. at 4].

Considering all the facts and circumstances, the Court finds this factor does not weigh in favor of detention.

### D. Nature and Seriousness of the Danger to any other Person or the Community if Defendant is Released

This factor weighs firmly in favor of detention. The threat Defendant poses to individuals and the community if she resumes ferrying large quantities of methamphetamine across state lines is substantial. In addition, Defendant appears to have a long-term addiction to methamphetamine and is struggling with multiple mental health disorders. [PTSR at 3–4]. She has been unable to maintain employment since at least 2023 and has no permanent residence. [*Id*. at 2]. Although she is requesting treatment for her drug addiction, something the Court views as commendable and certainly necessary, inpatient facilities are not secure facilities and they cannot hold Defendant if she decides to walk away and engage in further criminal activity. No evidence proffered by Defendant nor any condition or combination of conditions suggested by defense counsel changes that. If Defendant were released on the conditions suggested, the community would again face the real risk Defendant would pose as an interstate methamphetamine courier.

All factors taken as a whole and keeping in mind that a rebuttable presumption was triggered in this case, the Court finds by clear and convincing evidence that there are no conditions or combination of conditions that would reasonably assure the safety of any other person or the community.

## Conclusion

Having conducted a *de novo* review, the Court finds that the government has established by clear and convincing evidence that no release conditions or combinations of conditions would reasonably assure the safety of any other person or the community. Therefore, Defendant will remain detained pending trial.

IT IS THEREFORE ORDERED that Defendant's Motion to Revoke Detention Order [ECF No. 29] is DENIED.

DATED this 30th day of June, 2026.

Sara E. Hill
UNITED STATES DISTRICT JUDGE

15